UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| TLAREENEA DONNERSBACH, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:10-CV-00135 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tlareenea Donnersbach appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED for further proceedings in accordance with this Opinion.

## I. PROCEDURAL HISTORY

Donnersbach applied for DIB and SSI on November 7, 2003, alleging that she became disabled as of April 1, 2002. (Tr. 80-82, 496.) The Commissioner denied her application initially and upon reconsideration, and Donnersbach requested an administrative hearing. (Tr. 34-35, 60-62.) A hearing was conducted by Administrative Law Judge ("ALJ") Frederick McGrath on April 12, 2006, at which Donnersbach (who was represented by counsel), her father, and a

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

vocational expert ("VE") testified. (Tr. 843-76.) On October 11, 2006, the ALJ rendered an unfavorable decision to Donnersbach. (Tr. 496-503.)

After a request for review, the Appeals Council granted review and remanded the case for a new hearing. (Tr. 486-92.) On July 13, 2007, a second hearing was conducted by the ALJ, at which Donnersbach (who was again represented by counsel), her mother, a friend, and a VE testified. (Tr. 877-88.) On February 8, 2008, the ALJ again issued an unfavorable decision to Donnersbach, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (Tr. 19-29.) This time the Appeals Council denied her request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8.) Donnersbach then filed a complaint with this Court on April 28, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II. DONNERSBACH'S ARGUMENTS

Donnersbach alleges two flaws with the Commissioner's final decision. She claims that the ALJ (1) erred by failing to adequately explain his rationale for denying her request to question Dr. Candace Martin, a post-hearing medical examiner; and (2) improperly discounted the opinion of her treating psychiatrist, Dr. Prevesh Rustagi. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 19-25.)

2

# III. FACTUAL BACKGROUND[2]

## A. Background

At the time of the ALJ's decision, Donnersbach was thirty years old; had a high school education; and possessed work experience as a certified nursing assistant, cashier, and inspector in a factory. (Tr. 31, 80, 85, 90.) Donnersbach alleges that she became disabled as of April 1, 2002, due to bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), personality disorder, fibromyalgia, obesity, and migraine headaches. (Opening Br. 3.) Donnersbach does not challenge the findings of the ALJ in regard to her physical condition, and therefore the Court will focus on the evidence pertaining to her mental limitations. (Opening Br. 4. n.2.)

## B. Summary of the Relevant Medical Evidence

Donnersbach attempted to overdose with prescription medication when she was going through a divorce in 1996. (Tr. 803-08.) She attended several counseling sessions that year. (Tr. 803-08.) Three years later, in 1999, Donnersbach was evaluated by Dr. Joseph Fiacable, and he diagnosed her with depressive disorder NOS and rule-out major depression. (Tr. 762-63.)

Four years later, in 2003, Donnersbach filed applications for DIB and SSI. As a result, in February 2004, Donnersbach was evaluated by Dr. Ceola Berry at the request of Social Security. (Tr. 155-57.) Dr. Berry thought that Donnersbach had an average IQ and that her mood was subdued with flat affective expression; her thought processes evidenced an adequate fund of information. (Tr. 155.) Dr. Berry screened her for possible malingering, which was negative. (Tr. 155.) She was assigned a diagnosis of noncompliance with treatment, caffeine-induced

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 888-page administrative record necessary to the decision.

anxiety/sleep disorders, and personality disorder with "IED" and somatasized features. (Tr. 155.)

In March 2004, Dr. K. Neville, a state agency psychologist, reviewed Donnersbach's record and concluded that she did not have a severe mental impairment. (Tr. 159-72.) He opined that she had mild deficits in daily living activities; social functioning; and maintaining concentration, persistence, or pace. (Tr. 169.) His opinion was later affirmed by a second state agency psychologist. (Tr. 159.)

Donnersbach saw Ann Flaningam, a social worker, for counseling approximately twenty times from October 2003 to April 2005. (Tr. 362-97.) Upon initial evaluation, Ms. Flaningam diagnosed Donnersbach with major depressive disorder, recurrent, severe without psychotic features; and anxiety disorder NOS; and assigned her a current Global Assessment of Functioning ("GAF") score of 45, with a highest GAF score for the past year of 65.[3] (Tr. 394.) In February 2005, she referred Donnersbach to Dr. Rustagi, a psychiatrist, for an evaluation, noting in her referral that Donnersbach was not always compliant with attending therapy. (Tr. 363.)

Donnersbach was evaluated by Dr. Rustagi in February 2005. (Tr. 346-52.) He diagnosed her with bipolar disorder, atypical; generalized anxiety disorder; and ADHD, "provisional"; and assigned her a GAF score of 50. (Tr. 352.) He saw her approximately seventeen times, primarily for medication management, between February 2005 and May 2007.

---

[3] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).
A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id*. A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.* And, a GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning, but "generally functioning pretty well." *Id*.

(Tr. 340-62, 556-63.) In early April 2006, Dr. Rustagi noted in his progress note that Donnersbach was "stable and positive in her mood, coping skills, attention span and functioning in general" and was experiencing no significant side effects; he maintained her current medication regime. (Tr. 563.)

Later that same month, Dr. Rustagi completed a medical source statement on Donnersbach's behalf, reflecting a diagnosis of bipolar disorder, ADHD, and anxiety. (Tr. 444-54.) He assigned her a current GAF of 50 and a highest GAF during the past year of 52. (Tr. 444-54.) He opined that Donnersbach had "extreme" deficits in her ability to respond to work pressures and changes in a work setting; "marked" deficits in her ability to carry out detailed instructions; and "moderate" deficits in her ability to interact with supervisors and co-workers, understand and remember detailed instructions, and make judgments on simple work-related decisions. (Tr. 453-54.) He also articulated that she had "severe concentration difficulty, anxiety, and mood swings." (Tr. 453.) He stated that she had been "mostly" compliant with treatment, although at times needed to be reminded of appointments. (Tr. 453.) He represented that her prognosis was "guarded" and that multiple medication trials had not consistently helped. (Tr. 446.) He opined that she would miss more than four days of work a month due to her mental impairments. (Tr. 447.)

In June 21, 2007, Candace Martin, Psy.D., evaluated Donnersbach at the request of Social Security; however, Dr. Martin's report was not issued until after Donnersbach's second hearing with the ALJ. (Tr. 811-21, 877.) Upon testing, Donnersbach exhibited poor abstract reasoning, weak insight, and poor immediate and short term memory. (Tr. 813-14.) Dr. Martin observed that the level of effort Donnersbach put forth during the evaluation was "variable" and

5

that her testing responses were exceptionally vague, indirect, and with "notable lack of effort." (Tr. 813-15.) Dr. Martin administered the MMPI-II, the results of which suggested that Donnersbach was exaggerating her symptoms. (Tr. 814.)

Dr. Martin opined that Donnersbach may be malingering and as a result, her ability or inability to work in a competitive work environment could not be determined from the interview. (Tr. 814.) She diagnosed Donnersbach with probable malingering, ADHD, and bipolar I disorder. (Tr. 814.) She opined that Donnersbach had "mild" limitations in her ability to understand, remember, and carry out simple and complex instructions; and make judgments on simple or complex work-related decisions; and "moderate" limitations in her ability to interact with the public, supervisors, and co-workers; and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 836-37.)

*C. Correspondence Between the ALJ and Donnersbach Concerning Dr. Martin's Opinion*

On August 9, 2007, the ALJ sent Dr. Martin's report to Donnersbach's counsel for review, explaining that he proposed to enter it into the record as additional evidence. (Tr. 831.) In the correspondence he informed Donnersbach that she had the right to submit written comments, a written statement, additional records, or written questions to Dr. Martin. (Tr. 831.) He also stated that she could request a supplemental hearing or an opportunity to question Dr. Martin, which would be granted if he "determine[d] that questioning of [Dr. Martin] is needed to inquire fully into the issues." (Tr. 831.)

On August 20, 2007, Donnersbach's counsel notified the ALJ via letter that a page was missing from Dr. Martin's report. (Tr. 833-34.) He also requested a twenty-one day extension within which to obtain a response from Dr. Rustagi or prepare written interrogatories for Dr.

6

Martin. (Tr. 833-34.)

On September 10, 2007, Donnersbach's counsel sent a letter to the ALJ, forwarding Dr. Rustagi's response to Dr. Martin's report and stating that he had not yet received the missing page. (Tr. 840.) He also requested a supplemental hearing "for the sole purpose of questioning Dr. Martin regarding her report and testing." (Tr. 840.) As to Dr. Rustagi's response to Dr. Martin's report, Dr. Rustagi stated that although he had no reason to dispute Dr. Martin's findings, he found her interpretations "questionable." (Tr. 841.) He challenged how Dr. Martin measured Donnersbach's "effort" and emphasized that the MMPI-II is a "very superficial test." (Tr. 841.) He particularly questioned Dr. Martin's interpretation of Donnersbach's inconsistency of responses and exaggeration of distress as malingering, emphasizing that other explanations needed to be considered, and stated that he was "shocked" at Dr. Martin's diagnosis of probable malingering. (Tr. 841.)

On September 19, 2010, the ALJ responded via letter to Donnersbach's counsel, enclosing the missing page that he had requested. (Tr. 842.) The ALJ did not specifically address his request to question Dr. Martin, but afforded Donnersbach ten days to submit any "written comments" she wished. (Tr. 842.) Donnersbach, however, opted not to submit any written comments in response to the ALJ's letter. (Tr. 23.)

Instead, several months later, on January 9, 2008, Donnersbach's counsel sent a letter to the ALJ, reminding him of the request for a supplemental hearing in order to question Dr. Martin. (Tr. 32.) One month later, the ALJ issued a decision denying Donnersbach's application for benefits, specifically acknowledging in his decision that Donnersbach had requested a supplemental hearing to question Dr. Martin but that he had concluded "a supplemental hearing

7

was not necessary". (Tr. 23.)

### IV. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### V. ANALYSIS

#### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

8

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The ALJ's Decision

On February 8, 2008, the ALJ rendered the decision that ultimately became the Commissioner's final decision. (Tr. 19-31.) He found at step one of the five-step analysis that Donnersbach had not engaged in substantial gainful activity since her alleged onset date. (Tr.

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9

22.) At step two, the ALJ concluded that Donnersbach had the following severe impairments: fibromyalgia, obesity, migraine headaches, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), and anxiety disorder. (Tr. 22.)

At step three, the ALJ determined that Donnersbach's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 22.) Before proceeding to step four, the ALJ determined that Donnersbach's testimony of debilitating limitations was not entirely credible and that she had the following RFC:

> [T]he claimant has the residual functional capacity to perform work-related activities at the light exertional level . . . ; however, the claimant cannot use foot controls, crouch or crawl. She is limited to simple, routine and repetitive tasks and can only perform unskilled work in a work setting with only occasional changes. The claimant can be around other employees only occasionally and have brief (five minute) conversations with other employees and the public.

(Tr. 26, 28.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Donnersbach was unable to perform any of her past relevant work. (Tr. 29.) The ALJ then concluded at step five that she could perform a significant number of light work jobs within the economy, including mail sorter, electronics sub-assembler, and driver; as well as a significant number of sedentary jobs, including addresser, information clerk, and circuit board inspector. (Tr. 30.) Therefore, Donnersbach's claims for DIB and SSI were denied. (Tr. 31.)

### C. The ALJ's Consideration of Dr. Martin's Opinion Necessitates a Remand

Donnersbach contends that the ALJ erred by failing to articulate the reasons why he concluded a supplemental hearing to question Dr. Martin was unnecessary. (Reply Br. 4.) Ultimately, this argument has merit, warranting a remand of the Commissioner's final decision.

To explain, "[u]nder 42 U.S.C. § 405(b)(1), when a hearing is held, the disability

determination must be made 'on the basis of evidence adduced at the hearing.'" *Gardner v. Barnhart*, No. 02 C 4578, 2004 WL 1470244, at *18 (N.D. Ill. June 29, 2004)). "Post-hearing evidence is therefore afforded special treatment to ensure that the claimant is given the opportunity to respond, rebut, and request cross-examination." *Id*. "The Hearings, Appeals and Litigation Manual (HALLEX) indicates that proffer of posthearing evidence is required unless the claimant has knowingly waived her right to examine the evidence or the ALJ proposes to issue a fully favorable decision." *Id*. (citing HALLEX 1-2-7-30, 1993 WL 643048 (1993)). "The proffer letter must give the claimant a deadline to respond to the evidence and to request a supplemental hearing and the opportunity to cross-examine the author of the evidence." *Id*. (citing HALLEX 1-2-7-30).

Here, Donnersbach concedes that the ALJ sent an adequate proffer letter under HALLEX 1-2-7-30. Donnersbach challenges, however, the ALJ's failure to explain his rationale for denying her request for a supplemental hearing to question Dr. Martin.

In that regard, HALLEX 1-2-7-30 states that once a claimant requests to question the author of a post-hearing report, the ALJ will grant the request *if* he determines that questioning of the author is "required to inquire fully into the matters at issue", a condition that the ALJ articulated in the proffer letter to Donnersbach. (*See* Tr. 831.) Here, in his decision, the ALJ simply stated that a supplemental hearing to question Dr. Martin was not necessary, never explaining his rationale for the denial. (Tr. 23.)

As this Court has reiterated in many prior decisions, "[a]n ALJ must articulate his reasoning in his decision such that a reviewing court may evaluate his decision." *Luna v. Massanari*, No. IP 00-1075-C-T/G, 2001 WL 987860, at *3 (S.D. Ind. July 18, 2001) (citing

11

*Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988)). Here, because the ALJ failed to explain why he considered Donnersbach's request to question Dr. Martin unnecessary, the Court cannot perform an informed review.

Moreover, the ALJ's rationale is not self-evident in his decision. Dr. Martin's report is obviously "adverse" to Donnersbach's interests, since it suggests that she has only mild deficits and is malingering. To be sure, if the ALJ's decision had not looked to Dr. Martin's opinion at all, the ALJ's denial of Donnersbach's request to question Dr. Martin would be easily traceable. But here, the ALJ discussed Dr. Martin's opinion in detail, dedicating two paragraphs to it, and then expressly assigned "significant weight" to it when determining Donnersbach's RFC. (Tr. 24-25); *see Oyen v. Shalala*, 865 F. Supp. 497, 509 (N.D. Ill. 1994) (remanding case where ALJ failed to afford plaintiff an opportunity to cross-examine the author of a post-hearing report, and the ALJ relied upon the report in determining plaintiff's RFC). As a result, it is difficult to square the ALJ's conclusory assertion that Donnersbach's questioning of Dr. Martin was not necessary "to inquire fully into the matters at issue", HALLEX 1-2-7-30, with his ultimate reliance on the opinion in determining her RFC.

And, while this Court acknowledges that "[t]he purpose of HALLEX is to set forth guidelines and internal procedures for the Office of Hearings and Appeals staff" and that "HALLEX does not carry the authority of law", *Gardner*, 2004 WL 1470244, at *19; *see Blevins-Moore v. Barnhart*, No. 1:03-CV-13, 2003 WL 21919191, at *3 (N.D. Ind. July 30, 2003) (acknowledging that HALLEX is not binding on the Commissioner when there is no underlying regulation), the ALJ's failure to afford Donnersbach the opportunity to question Dr. Martin *also* implicates her right to due process of law. To explain, "the deprivation of a cross-

examination opportunity violates a claimant's statutory right under Section 405(b)(1) that an eligibility decision must be made 'on the basis of evidence adduced at the hearing.'" *Oyen*, 865 F. Supp. at 509 (quoting *Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir. 1976)). More succinctly, "[t]he use of an adverse post-hearing [medical] report without an opportunity to cross-examine its author and to present rebuttal evidence has been held to violate a claimant's right to due process of law." *Tom v. Heckler*, 779 F.2d 1250, 1252 n.2 (7th Cir. 1985); *see also Wallace v. Bowen*, 869 F.2d 187, 199-91 (3rd Cir. 1989) (collecting cases holding that an ALJ's reliance upon a post-hearing physician's report was improper where claimant was not given an opportunity to question the physician); *Lovellette v. Barnhart*, No. 1:02-CV-278, 2003 WL 21918642, at *11 (N.D. Ind. June 25, 2003) (finding a serious procedural error where the ALJ relied, in part, upon evidence not in the record at the time of the hearing and failed to issue a proffer letter to plaintiff).

Moreover, courts have concluded that the opportunity to merely comment on a post-hearing report, rather than question its author, does *not* adequately protect a claimant's rights. *See Wallace*, 869 F.2d at 192-93; *Lonzollo*, 534 F.2d at 714. "Effective cross-examination could reveal what evidence the physician considered or failed to consider in formulating his or her conclusions, how firmly the physician holds to those conclusions, and whether there are any qualifications to the physician's conclusion." *Wallace*, 869 F.2d at 192. Therefore, the ALJ's invitation to Donnersbach to submit written comments on the post-hearing report does not adequately satisfy her due process rights to cross-examine Dr. Martin.

In sum, because the ALJ failed to minimally articulate his rationale for denying Donnersbach's request to question Dr. Martin, whose opinion was adverse to Donnersbach's

interests, and because the ALJ's denial also violates her rights to due process, this case will be remanded to the Commissioner.[5]

## VI. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED for further proceedings in accordance with this Opinion. The Clerk is directed to enter a judgment in favor of Donnersbach and against the Commissioner.

SO ORDERED.

Enter for this 25th day of January, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[5] Because a remand is warranted with respect to the ALJ's consideration of Dr. Martin's report, the Court need not reach Donnersbach's second argument—that the ALJ improperly discounted the opinion of her treating psychiatrist, Dr. Rustagi.

14